976 F.2d 735
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
David R. PURNELL, Plaintiff-Appellant,
v.
Winston I. SMART, Defendant-Appellee.
 No. 92-2052.
 United States Court of Appeals, Seventh Circuit.
 Argued July 8, 1992.
Decided Sept. 22, 1992.
 
 Before CUMMINGS, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 This interlocutory appeal arises from the denial of a motion for a preliminary injunction seeking to bar a private party, Winston I. Smart, from making any further public release of David R. Purnell's educational transcripts. Purnell, Smart, and another applicant were on the short-list for a position to teach agricultural law at the University of Illinois. Purnell and the third applicant are white males, Smart is a black male. During the hiring period, both Purnell and Smart were LL.M. candidates at the University of Arkansas School of Law, a degree both now hold. Purnell was hired for the position in the College of Agriculture at the University of Illinois. Smart filed a pre-employment grievance with the University claiming that he had not been hired because of his race. An administrative hearing was scheduled so Smart could air his racial discrimination charges and the University could defend against them.
 
 
 2
 In preparation for the hearing, the head of the Department of Agricultural Economics sent a letter with copies of all the candidates' transcripts to the hearing officer. A copy of the letter and transcripts was also sent to Smart. This was done notwithstanding a notation on the reverse side of Purnell's transcripts prohibiting the release of the transcripts to a third party without Purnell's written consent. Purnell's transcripts reflected two grades as "F* ". Smart believed these to be failing grades and used them as support for his charges of racial discrimination.
 
 
 3
 At the administrative hearing, Smart walked out, apparently angered by the evidentiary rules being used. Unsatisfied with the attention that he believed his discrimination charges were receiving, Smart mailed more than 1500 letters complaining of the University's hiring procedure. Many of the letters sent by Smart had copies of Purnell's law school transcripts attached. The mailings were sent to the Governor of Illinois, Illinois legislators, University of Illinois faculty, administrators, and trustees, University of Arkansas School of Law, members of the Agricultural Law Association--and the news media.
 
 
 4
 Among other things, Smart's letters stated that Purnell had failed the courses carrying the "F*" notation; "flunked out" of the LL.M. program; and would not receive his LL.M. degree without physically returning to the Arkansas campus and retaking the failed courses. News stories appeared in the media based on the allegations contained in the mailings sent out by Smart. Thereafter, Smart wrote to the University of Arkansas asking for clarification of the "F* " grade. He was told that the grade was interim in nature. In fact, Purnell's "F* " grades were "incompletes" and he later received a passing grade or credit for each course.
 
 
 5
 Purnell instituted this action seeking to enjoin Smart from further publishing his allegations and the transcripts. Purnell also seeks compensatory damages. The case was filed in state court, and later removed to federal district court based on diversity jurisdiction. Although the state judge granted a preliminary injunction, upon removal to federal court the state court's preliminary injunction was vacated, and the district judge denied preliminary injunctive relief. Purnell appeals the denial of a preliminary injunction.
 
 
 6
 To receive a preliminary injunction, a moving party must show (1) that there is some likelihood of success on the merits, and (2) that "no adequate remedy at law" exists, and that without the injunction the moving party will suffer "irreparable harm." If the moving party can establish both of these prerequisites, the district court must then determine (3) any irreparable harm the non-moving party will suffer if preliminary injunctive relief is granted, balancing that against the irreparable harm suffered by the moving party if such relief is denied. Finally, the district court must consider (4) the consequences to non-parties of granting or denying the preliminary injunction--the interest of the public. Abbott Laboratories v. Mead Johnson & Co., No. 91-3492, slip op. at 7 (7th Cir. July 23, 1992).
 
 
 7
 We review the grant or denial of injunctive relief under an abuse of discretion standard. We will reverse the district court's decision only if a clear error of fact or law has been committed. We defer to the district court's weight assessment of each of the injunction factors, and are prohibited from substituting our own judgment in its place. Abbott Laboratories, slip op. at 9.
 
 
 8
 The request for injunctive relief was tied to two invasion of privacy theories--"false light publicity" and "public disclosure of private facts." The district judge reviewed the propriety of injunctive relief by focusing separately on each theory. We do the same.
 
 A. False light publicity
 
 9
 The tort of false light publicity in Illinois consists of three elements: (1) that the plaintiff is placed in a false light before the public, (2) that the false light in which the plaintiff is portrayed is highly offensive to a reasonable person, and (3) that the person giving the publicity acted with knowledge or reckless disregard of the falsity of the publicized information and the light in which the plaintiff would be portrayed. Lovgren v. Citizens First National Bank, 534 N.E.2d 987, 990-91 (Ill.1989). Here the district judge assumed, for the purpose of his analysis, that Purnell could prove all three elements of this tort. The judge also assumed that Purnell would suffer irreparable harm and that he had no adequate remedy at law. Nevertheless, the court determined that a preliminary injunction should not issue.
 
 
 10
 In denying injunctive relief under this tort, the district court found that Smart's allegation--racially discriminatory hiring practices by a public institution--raised a concern of such public interest that it outweighed all other factors. It is true, as we stated in Abbott Laboratories, that the aspect of "public interest" cannot be considered alone in determining whether an injunction should issue. Abbott Laboratories, slip op at 9, n. 3. And indeed here, the district judge weighed this consideration together with the other factors used to determine whether granting a preliminary injunction was appropriate.
 
 
 11
 The underlying aspect of this case is racial discrimination. Racial discrimination inherently is an issue of the most serious public concern. Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1691 n. 8 (1983). This is certainly true when there are allegations of racial discrimination by a public university. We believe the district court did not abuse its discretion in determining that the public interest factor described in the Abbott Laboratories test weighed most heavily. None of the other factors are so strong that they overcome the interest of the public in knowing about Purnell's transcripts. Although Purnell may be harmed by further publicity, it was not error for the district judge, in light of the charge of racial discrimination, to determine that the greater harm would be in enjoining public dissemination of Purnell's transcripts.
 
 B. Public disclosure of private facts
 
 12
 The Illinois courts have recognized the tort of "public disclosure of private facts" and used the definition of that tort found in The Restatement (Second) of Torts, § 652(D) (1977). To state a course of action in Illinois, the plaintiff must show that (1) public disclosure was made, (2) of private facts, (3) that the public disclosure represents an intrusion on privacy which would be objectionable or highly offensive to a reasonable person, and (4) that the matter disclosed was not of legitimate concern to the public. Miller v. Motorola, Inc., 560 N.E.2d 900, 902 (Ill.App. 1 Dist.1990).
 
 
 13
 Unlike false light publicity, the issue of legitimate public concern is an element of the tort of public disclosure of private facts. Thus, consideration of the matter of public interest is incorporated into a determination of likelihood of success on the merits. In analyzing Purnell's likelihood of success on the merits on this claim the district judge assumed that Purnell met the first three requirements. But as to the fourth requirement--that the matter publicized was not of legitimate concern to the public--the district judge found that Purnell could not carry his burden of proof. Thus, the court determined that Purnell had little likelihood of success on the merits of his public disclosure of private facts claim. As before, in making this finding the district judge determined that the allegation of racial discrimination in hiring by a major University--under the circumstances involved in this case--raised a matter of legitimate concern to the public thus rendering impossible proof of the fourth element of the tort. We cannot say that the district judge abused his discretion in this determination. As indicated earlier in matters of racial discrimination there is inherent public interest.
 
 
 14
 The denial of preliminary injunctive relief is AFFIRMED.